JUDGE RLEMING
concurred with JUDGE ROANE.
On the last day of the term Hay moved the Court to reconsider the case, which motion being granted, he submitted the following propositions:
*1. That the statute, on which the case depends, being a statute for the prevention of frauds, is to be liberally and beneficially construed, in favour of those interests it is the avowed object of the law to protect.
*727 2. Thai the case of Mr. Owen, a purchaser, under an exe.cution, of property which had been held for nine years, under a loan, is not only within the policy, but the very words of the law.
3. That where slaves, &c. are loaned, the will or deed, by which they are to be exempted from the provision of the law, must precede or accompany the loan, and not follow it.
4. That if a subsequent declaration be sufficient, the will of Hurt does not declare a loan.
5. That if it did declare a loan, the omission of the name of the slave would be fatal.
6. That if the will did declare a loan of the slave in question by name, it would not avail, as the loan declared by the will in 1789, could not be the loan proved in 1792.
7. That if the will has any bearing on the subject at all, it is to revoke the loan; but this revocation not having been followed up by “demand made and due process of law,” Beasley’s possession, after January, 1797, was, in fact and in law, a continuation of the possession which commenced in 1792.
These propositions were amplified and illustrated by Mr. Hay, in his answer to Mr. Taylor, who opened the argument at this term. Mr. M’Rae closed the discussion, in a reply to Mr. Hay; but, the few points, not touched on in the former argument, having been fully considered by the Judges, it is deemed unnecessary to repeat them.
Tuesday, May 9. The Judges again delivered their opinions.
JUDGE TUCKER.
Upon consideration of the arguments offered on the rehearing of his cause, I adhere to my former ^'opinion, that the judgment of the District Court be affirmed.
JUDGE ROANE. The general question propounded by the plaintiff in the Court below (the now appellee) for the opinion and instruction of the Court, and on which the instruction we are now reviewing was founded, is, whether the possession of a slave under a loan, for more than five years, subjects that slave to pay the debts of the lendee, under an execution against him, if, within the five years, a will has been made and recorded, conveying the property in the said slave to another.
It is clearly admitted on all hands that a resumption of the slave within that time would put an end to the loan; and I am of opinion that the making' and recording a deed or will, within the time aforesaid, granting away the slave to another will have the same effect. The 3d clause of the act of frauds, (a) has put the recording of a deed or will avoiding a loan by way of limitation or otherwise, on the same footing with an actual resumption of the property. Such recording is deemed to be a notice to the world, adequate to do away the presumption of property otherwise in-ferable from a possession of five years. In a previous part of the same section respecting conveyances of goods and chattels on considerations not deemed valuable in laW, the act has put the proving and recording thereof on the same ground with the actual delivery of possession; and in Claiborne v. Hill, 1 Wash. 177, in the case of a mortgage of slaves a delivery of possession to the mortgagee is held to be supplied by recording the deed of mortgage. The analogy of these cases to the one before us is very strong, in aid of the terms of the clause in question ; and, as a resumption of the property within the five years would, in the case of a loan, prevent the effect of the clause in question, so will the recording a deed or will, within the time aforesaid, containing limitations adverse to the title of the lendee: the notice given to the world, thereby, touching the right of property, prevents the mischief intended to *be guarded against by the act; and it is unnecessary that such recording should be coeval with the date of the loan ; it being sufficient if done at any time within the five years.
It is objected, however, that the will, which is set out in the bill of exceptions, not having bequeathed the slave in question to the appellant and his brother by name, a sufficient notice was not given the world, on this subject, by proving and recording the same. I answer, first, that this is making the case of the plaintiffs better than he himself has made it in his address to the Court; for he there admits, that the slave in question was disposed of by the said will to the defendant; secondly, that although the name of the slave is not used in the will, he is described as being the “negro man new in the possession of William Beasley;’ ’ and 1 ‘id certum est quod cerium reddi potest;” and, thirdly, that, on the other hand, the said will inhibits a right of property in William Beasley to “any part of the testator’s estate, except what he had given him in the life-time of his late wife.” By means of these several criteria, it might as certainly have been collected from the will, taken in connection with other testimony and circumstances, that the slave in question is the one bequeathed in the will aforesaid, as if his name had been particularly' stated. Indeed, in that case, if this negro had been bequeathed by his proper name rather than by a description, it would have been necessary to have ascertained, by evidence de-hors the will, that any given slave was the slave therein intended.
On these grounds, I am of opinion, that the instruction of the District Court was erroneous, and that the judgment ought to be reversed.
JUDGE FLEMING. The only material point in this case is, whether the slave in question was the property of William Beasley, at the time he was taken in execution by the Sheriff of Charlotte; and as the case of Fitzhugh v. Anderson and others, was relied on by the appellee’s counsel as decisive in this, it may not be amiss to shew that the two cases are ‘‘essentially different in some of their most prominent features.
It appears, by the bill of exceptions, that prior to the year 1780, William Beasleys father of the appellant, had intermarried with Ann, a daughter of William Hurt, by *728 whom he had two sons, to wit, John Beasley, who died an infant, and Edwin Beasley, the appellant: also two daughters. That on the 31st of August, 1789, the said William Hurt, duly made and published his last will and testament, (his said daughter, Ann Beasley, being then dead,) by which said will he bequeathed the slave in question to his two grandsons, John and Edwin Beasley, as soon as they may come to lawful age, to be equally divided between them; and willed, that his son-in-law, William Beasley, (father of the appellant,) should not have any part of his estate, except what he had given him in the life-time of his late wife, Ann, daughter of the testator, who died in the year 1796; that on the 1st day of December, in that year, his will was proved, by one witness, in the County Court of Nottoway; and the executors then qualified under the will, which was fully proved on the Sth day of January following, and admitted to record; that John Beasley, one of the legatees of the said slave, died in the life-time of the testator; that the appellant attained the age of 21 years in the year 1801, and was then living a store-keeper, in the town of Petersburg; when, in the same year, 1801, the said slave was publicly sold by the Sheriff of Charlotte County, by virtue of a fieri facias, issued against the goods and chattels of the said William Beasley, father of the appellant; and that the appellee became the purchaser of the said slave at the sale. The plaintiff proved that William Hurt had delivered the said slave to William Beasley more than five years before he was seized and sold, and that he remained in possession of Beasley during the whole time.
The defendant proved, that his grandfather, William Hurt, did, in the year 1792, lend the said slave to his father, to assist in maintaining his children, reserving to himself the right of taking back the said negro whenever he might *think proper; and that William Hurt died in the year 1796, before the expiration of five years from the loan aforesaid, and whilst the defendant was yet an infant. The only pretence of title, in William Beasley, is the length of possession under the loan, which was about four, or at most under five years, prior to the death of William Hurt, by whose will the slave was bequeathed to the appellant, and his infant brother, John Beasley, who (as before noticed) died in the life-time of his grandfather. I consider the possession of William Beasley, subsequent to the death of the testator, merely as a trustee for his infant son, whose interest in the slave vested immediately on the death of his grandfather, to be consummated on his arrival to the age of 21 years; and the recording the will of William Hurt, wherein he expressly declares that William Beaslej' should have no part of his estate, before he had five years’ possession under the loan, was, in mjT conception, legal notice to creditors and subsequent purchasers; and, it seems to me, that the warning of caveat emptor forcibly applies in the case before us. For, although our laws wisely guard against the practis-ing frauds on creditors and fair purchasers, they are no less careful to guard and protect the rights of infants, and with much stronger reason, as the law justly supposes them incapable of acting for themselves. Some doubts that had arisen in my mind, on the first view of this subject, were removed on recurring to the latter part of the second clause of the “act to prevent frauds and perjuries,” wherein it is enacted, that where any loan of goods and chattels shall be pretended to have been made to any person with whom, or those claiming under him, possession shall have remained by the space of five years, without demand made, and pursued by due process of law, on the part of the pretended lender, or where any reservation or limitation shall be pretended to have been made of a use or property, by way of condition, reversion, remainder, or otherwise, in goods and chattels, the possession whereof shall have remained in another as aforesaid, the same shall be taken as to the creditors and purchasers of the person aforesaid, so remaining in possession, to be *fraudulent within this act, and that the absolute property is with the possession, unless such loan, reservation, or limitation of use of property, were declared by will, or. by deed in writing, proved and recorded as aforesaid. The testator having declared, in his will, that William Beasley should have no part of his estate, except what he had given him in the life-time of his wife, and having bequeathed the slave in question to the appellant and his brother, when they should come to lawful age, was a g'ood and sufficient limitation of the use of the slave in William Beasley, although he, for the laudable purpose of assisting him in maintaining his children, was delivered to him, on loan, after the date of the will, and clearly shews that there was no intention of fraud or deception, which the act seems carefully to guard against.
In the case of Fitzhugh v. Anderson and others, cited in the argument of this cause, and much relied on by the appellee’s counsel, it appeared that John Fitzhugh, father of the complainant, Dennis Fitzhugh, had been in quiet possession of the negroes in controversy (many in number) for upwards of twenty years; had removed with them from Caroline, to the County of Amherst, and had there obtained extensive credits, on the strength of such possession, and many of them had come into the possession of fair purchasers, without notice of any other claim, long before the death of William Fitzhugh the grandfather, (under whose will Dennis Fitzhugh claimed the negroes,) and who lived in the County of King George, ISO miles from the County of Amherst. From these circumstances there appears to me but little analogy between the two cases, they being widely different in several material points.
I am therefore of opinion, that the judgment of the District Court is erroneous, and ought to be reversed.
By the opinions of a majority of the Court, the following judgment was entered:
“This Court is of opinion, that the judgment of the District Court is erroneous in this, that the Court instructed *the Jury that the peaceable and uninterrupted possession, by the said William *729 Beasley, of the slave in question, by virtue •of a loan from William Hurt, which possession continued from the year 1792 until the year 1801, subjected the said slave to the payment of the debts of the said William Beasley, by execution, in the year 1801, although William Hurt, the lender, died in the year 1796, after having made a will, in which he disposed of the said slave to the defendant, his grandson, who was under age until the year 1801; the executors named in the said will, having duly qualified under the same in December, 1796. 'The said judgment is therefore reversed and annulled, and this Court proceeding, &c. it is ordered, that the cause be remanded to the Superior Court of County, for a new trial to be had therein, with direction that no such instruction be given to the jury on such trial.” _ _

 Rev. Code, y. 1, p. 16.